# EXHIBIT A

# PIASTA NEWBERN WALKER, LLC

3301 Windy Ridge PKWY. • SUITE 110 • ATLANTA, GEORGIA 30339 (404) 996-1296 • FAX: (404) 996-1316

November 2, 2021

**VIA EMAIL**
Nautilus Insurance Company
c/o Katherine Karam and Christy Maple
Phelps Dunbar LLP
Katherine.Karam@phelps.com Christy.Maple@phelps.com

**Re: Felicia Young, as Next of Kin of Malik Young, deceased**
DOI: November 17, 2020
Location: Pine Ridge Apartments, 1958 Clifton Road, Macon, Georgia
Claimant's File No. #: 050-006883
NIC Claim No. N000010116409

Dear Ms. Karam and Ms. Maple,

Please accept this letter as Felicia Young's amended time-limited settlement demand in the above-referenced matter for the disclosed policy limits of $4,000,000.00 (Four Million Dollars) in exchange for a general release of all claims against all potential owners, managers, operators, and insureds of the subject premises, and any other potential parties, in any way related to Malik Young's injuries and death.

As you know, we previously submitted a demand for $1 Million on September 21, 2021 related to this incident. On October 20, 2021, Nautilus disclosed an additional $3 Million in excess coverage. We subsequently withdrew the original demand and hereby submit this amended demand for disclosed policy limits.

We believe that, even after the recent disclosure of additional insurance, the Pine Ridge Apartments remain woefully underinsured for this tragic incident. That said, although we view this as an excess case, Ms. Young is open to pre-suit mediation to avoid the time and emotional toll of extended litigation, and in the spirit of compromise. Please let us know how Nautilus wishes to proceed.

## FACTS, LIABILITY, AND DAMAGES

On November 17, 2020, 24-year-old Malik Young died from multiple gunshot wounds in the parking lot of the Pine Ridge Apartments. Based on the disclosures, Nautilus insured this property. That day, Malik was a visitor of his girlfriend, Chimindia White, who was a resident living at the apartments. Malik resided with his mother, Felicia Young. As such, Malik was a lawful invitee of the Pine Ridge Apartments at the time of the shooting under Georgia law.

On the night of the shooting, Chimindia and Malik parked in the parking lot of the complex, with Chimindia's young son in a car seat. Malik and Chimindia exited the car, and Chimindia went inside. Malik unbuckled the little boy from his car seat and was in the process of carrying the boy toward Chimindia's apartment building, when he was shot multiple times by an unknown assailant in the parking lot. Malik died with Chimindia's son in his arms.

Unfortunately, there were no meaningful security measures in place to prevent or deter this crime of opportunity in a common area of the complex in open view. To that end, the property had no physical security, grossly inadequate lighting, no secured access, fencing, or vehicle / pedestrian gates, and no video surveillance. Essentially, the premises had no security measures of any kind in place at the time of the shooting to protect residents and guests from third-party crime.

By contrast, the risk of crime was known and easily foreseeable to the complex. The apartment complex and its surrounding area was, and remains, a hot bed of criminal activity. We have enclosed a partial list of violent crimes that have occurred on, or within blocks, of the premises. The evidence in our possession shows that the complex was located in a dangerous area; that your insureds knew or should have known of significant prior crime on their premises; and that your insureds had a duty to have reasonable security measures in place. If litigation becomes necessary, we are confident that the number and severity of known crimes at and around the complex will only increase as additional records testimony are received from police, prior crime victims, residents, and staff during discovery. Clearly, your insureds had the opportunity to invest in adequate safety measures. For whatever reason, they failed to do so. Malik Young died as a result.

As you know, even the process of scheduling a site visit to the complex was difficult, as we were told by law enforcement that "tensions are high" in the area due to ongoing crime problems. The visit was delayed at the request of law enforcement, though we were eventually able to find a time to view the premises with the prior claims adjuster handling the file during daylight hours. As I'm sure your prior claims adjuster agreed, the inspection itself revealed noticeable security risks.

Georgia Law imposes a duty on owners and occupiers of properties, such as your insured, to keep its premises safe for residents and visitors. An owner/ occupier may be found liable for its failure to exercise reasonable care to keep the premises and approaches safe from third-party crime. *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 882, 524 S.E.2d 524, 528 (1999). Because Malik was shot and killed in a common area of the premises while a guest of a tenant on the property, your insureds had a duty to use ordinary care in keeping the Premises safe. *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 856 S.E.2d 267, 276 (2021), reconsideration denied (Mar. 30, 2021).

We believe that a jury trial in this case is a near certainty. At trial, the only issues in dispute will be: (1) Did the premises need security measures? (2) Could reasonable security measures have prevented the shooting? and (3) What is the value of Malik's life and his pain and suffering? We believe that the answers to questions (1) and (2) above will be yes. The complex was negligently maintained, inspected, secured, patrolled, and managed in light of the known and foreseeable risks of crime on the property. We believe the evidence will show that if your insured had meaningful security measures in place, this incident would not have occurred, and Malik would still be alive. Given the egregious history of crime and the absence of meaningful security measures, our client has strong claims against your insured under the premises liability statute, as well as under the state of Georgia's and Fulton County's civil nuisance laws.

As to damages, the severity here is self-evident. Malik is survived by his mother, Felicia Young. At the time of his death, Malik was just 24 years old. Given his age, he was projected to live an additional fifty (50) plus years according to the annuity mortality tables. A jury will very likely assign an 8-figure valuation to Malik's life, should this case go to trial. The risk presented by this case to your insureds is enormous, and this is a case you should settle.

Moreover, we note that the Georgia Supreme Court recently held that O.C.G.A. § 51-12-33(b), which provides for the reduction of damages in proportion to nonparty fault, does not apply in single defendant cases. *See Alston & Bird LLP v. Hatcher Management Holdings, LLC*, S20G1419, 2021 WL 3501075 (Ga. Aug. 10, 2021) ("Hatcher III"). The Supreme Court stated: "There is no grant of authority in the apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant." *Id.* at *5. There will likely be only one named defendant in a future trial of this case. Thus, even if a jury in a future trial of this matter apportions fault to the shooter or some other entity(ies), we believe that the named defendant, and by extension Nautilus, will be liable for the full amount of the verdict.

**DEMAND**

We therefore make this time-limited demand for the disclosed policy limits of Four Million Dollars ($4,000,000.00) in exchange for a general release of all claims against all potential defendants and their insurers. This demand is made pursuant to *Southern General v. Holt*, 200 Ga. App. 757, 409 S.E.2d 759 (1991) and *Brightman v. Cotton States*, 276 Ga. 683, 580 S.E.2d 579 (2003).

In a future trial of this case, we would expect to obtain significantly more than the offer made herein. I briefly note that our firm has achieved recent successes in jury verdicts that exceeded the disclosed coverage.

For instance, in May 2018, we obtained the largest premises liability jury verdict in the State of Georgia for 2018, in a case where the first line of coverage did not offer a penny before trial. We presented no special damages in that case, yet the jury valued damages at $11,250,000.00 (*Hicks v. MARTA*, Fulton County Superior Court). In April 2019, we obtained the fifth largest auto-collision jury verdict in the State of Georgia for 2019. (*Alfred v. Powersecure*, Inc., Gwinnet County Superior Court). In the April 2019 verdict, the jury awarded our 46-year-old client with preexisting conditions $1,755,000.00 in compensatory damages, plus attorneys' fees, where the primary injury was a "shoulder impingement" requiring arthroscopic surgery, with only $60,000 in special damages. The April 2019 verdict far exceeded the first line of coverage as well. Our firm had another excess verdict in July 2019 for more than double the policy limits. (*Guerra v. Burtnett*, Hall County State Court). In all three cases, the insurers said there was little chance of an excess verdict; each insurer was wrong.

**The offer referenced herein will remain open for Thirty (30) days and will expire on Friday, December 3, 2021 at 5:00PM Eastern Standard Time, and thereafter will no longer be available for acceptance.** Considering the significant exposure above the disclosed policy limits, please place your insureds in the best possible position to sue for bad faith upon the entry of an excess verdict to protect their interests, if this demand is not accepted.

We look forward to hearing from you.

With best regards, I remain

Very truly yours,

Christopher B. Newbern, Esq.
chris@pnwlaw.com
Andrew L. Hagenbush, Esq.
andrew@pnwlaw.com

Enclosures:

Incident Report
Partial Crime Grid